UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2009 MAR 23 P 4: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Crim. No. |
| ) | |
| v. ) | 17 U.S.C. §506(a)(1)(A) |
| ) | 18 U.S.C. §2319(b) |
| MARK PTASHNE, ) | (Copyright Infringement) |
| ) | |
| Defendant ) | 09 CR 10083 MLW |

### INFORMATION

The United States Attorney charges:

### BACKGROUND

1. At all times relevant to this information, MARK PTASHNE was an individual living in California.

2. Beginning by approximately 2001, PTASHNE sold high-end software programs at prices far below the retail price, using the Yahoo! auctions website. PTASHNE had not bought this software from the manufacturers or through any legitimate channels. Rather, he had illegally downloaded the software from internet websites.

3. To protect their software products from illegal copying and distribution, manufacturers generally include with the software a registration key, which is an encryption code or other security device designed to restrict access to the software to legitimate purchasers and to prevent these users from making copies. People interested in illegally copying and distributing software can "crack" it, by breaking the encryption code or circumventing the security mechanism. Unlike legitimate software, cracked software can be copied repeatedly.

4. The software PTASHNE obtained and then sold was all cracked. Because the software had been cracked, PTASHNE'S customers could install and run it without the

manufacturer's registration key that is required for legitimate software products.

5.   PTASHNE's methods for selling the cracked software changed over time. When he began his operation, in approximately 2001, he primarily sold via the Yahoo! auctions website. He later posted an add on Recycler.com. His customers generally paid with money orders or via the internet payment system Paypal.

6.   In July, 2004, PTASHNE sold cracked software, manufactured by Solidworks, to an undercover FBI agent in Boston. The agent paid PTASHNE $73.50 for a set of commercial software titles with a retail price of approximately $3,995.

7.   In May, 2005, PTASHNE sold the undercover FBI agent another set of cracked Solidworks software titles, with a retail price between $4,000 and $6,000, for $195.

8.   In January, 2006, PTASHNE sold the undercover FBI agent a set of cracked software titles, manufactured by Avid, for $387.50.

9.   On November 20, 2007, PTASHNE possessed, on computers, CD's, and DVD's in his Dana Point, California home, more than 5,560 cracked software programs.

## COUNT ONE
(Copyright Infringement)
17 U.S.C. §506(a)(1)(A)
18 U.S.C. §2319(b)

10. The United States Attorney realleges and incorporates by reference paragraphs 1-10 of this Information and further charges that:

From in or about July, 2004 to in or about November, 2007, in the District of Massachusetts, the Central District of California and elsewhere, the defendant,

MARK PTASHNE,

willfully infringed the copyrights of commercial software, by reproducing and distributing, including by electronic means, during a 180-day period, 10 or more copies of one or more copyrighted works, which had a total retail value of more than $2,500, for the purpose of commercial advantage and private financial gain.

In violation of 17 U.S.C. §506(a)(1)(A) and 18 U.S.C. §2319(b).

## FORFEITURE ALLEGATIONS
(17 U.S.C. §§ 506, 509; 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

11. Upon conviction of any offense in violation of 17 U.S.C. § 506, the defendant,

MARK PTASHNE,

shall forfeit to the United States, pursuant to 17 U.S.C. §§ 506 and 509, and 28 U.S.C. § 2461(c), all infringing copies or phonorecords and all implements, devices, or equipment used in the manufacture of such infringing copies or phonorecords.

12. Upon conviction of any offense in violation of 18 U.S.C. § 2319, the defendant,

MARK PTASHNE,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense. The property to be forfeited by the defendant includes, but is not limited to, $26,700 in United States currency seized from 32466 Crown Valley Parkway, Apartment 307, Dana Point, California on November 20, 2007.

13. If any of the property described in paragraph 1 or 2 hereof as being forfeitable pursuant to 17 U.S.C. §§ 506 and 509, 18 U.S.C. § 981(a)(1)(C), or 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendants up to the value of the property described in subparagraphs a through e of this paragraph.

All pursuant to 17 U.S.C. §§ 506 and 509, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

                          MICHAEL J. SULLIVAN
                          United States Attorney

By: _____
     Adam J. Bookbinder
     Assistant U.S. Attorney

Dated: March 23, 2009